Case Number 09-1179 Outer Circle Products v. United States Mr. Silberman. Good morning and may it please the court. This case involves a totally different subject. The classification of soft-sided thermally insulated jug and bottle wraps. The trial court affirmed the custom services classification, classifying these goods under the luggage provisions in the harmonized tariff under 4202. Primarily because one of the exemplars in that provision was bottle cases. The court's decision is directly contrary to this court's decisions in the sports graphics cases and SGI cases. They're the same company, just one became an acronym for the other. Involving the classification of soft-sided thermally insulated cooler bags. Counselor, are we likely to see any more of these cases? Because I say this because 4202 was changed way back in 2001 and now includes insulated food or beverage bags which would make your position much more difficult. So is this sort of the last of these that we're going to get most likely? Are you aware of any others? No, I'm not aware of any others and it's not a question of making the case more difficult. What happened when they changed the law in 2001, they took the same duty rate from HTS heading 3924 and moved it into 4202. So there's no reason to fight anymore. The importer is getting the 4.3% duty, whereas in this case he's being assessed with a 19% duty rate, which is contrary to the SGI cases. Well, so here's my question for you, which is in SGI and in sports graphics, they relied on, and I'm going to pronounce this wrong despite my clerk actually giving me the phonetic pronunciation, eustem generis. Eustem generis, yes. Eustem generis, all right. So they relied on eustem generis to conclude that, well, the thing that we're trying to classify doesn't actually squarely fall within either statute in terms of the specific articles listed. But we looked to eustem generis to say, well, which one is it more like, this category or that category? And that's how they reached the conclusion. They said, well, 34 is all kitchen stuff, that's food, and this 4202 looks more like luggage. I mean, that's kind of a shorthand version of what they did. Well, in this case, the government argues something different that did not get argued in sports graphics or SGI. They're arguing that your article falls squarely within one of the enumerated things in the statute, which takes it outside the confines of a need to look to eustem generis, and that's how it's different. So given that, given that there's a specific statutory section that they're saying you fall within, how is this case really like SGI and sports graphics? How are we bound to put this in the same category as that case? Okay. If you didn't follow all that, you can ask me questions. I understood it perfectly, and I believe I can respond to your question. The final answer is yes, it's the same exactly as SGI and sports graphics. But first, let's talk about eustem generis. The way eustem generis works is if you have a statute that has a number of exemplars, and then you have general language afterwards, which should say, and similar articles, what the court does is it's a rule of statutory construction. The court says, what do all the exemplars have in common? That creates the limits of the statute. Okay, now let's apply that to similar articles. Is our article similar to what these things have in common? And in SGI, the court said no. Why? Because the court said in SGI, none of the exemplars in heading 4202 involves the containment of any food or beverages. So there you had a cooler bag. Cooler bag couldn't be similar because none of the named items carried food or beverages. There's a- So do you think that is now an explicit statutory interpretation, even though the court wasn't interpreting the individual words like bottle case? You think that's an explicit, nonetheless, statutory interpretation that none of those words apply to things that carry food or beverages? I think that for the court to have made this decision, it determined the extent of the scope of this statute. And when it says that none of the exemplars carried food or beverages, that means to me- I'm not on the court, but it means to me they looked at all the items. What do they do? What's the common meaning? What's the commercial meaning? No food or beverages. Food or beverage items go in 3924 household articles. That's the way that works. There's a companion rule of statutory construction called notator associus. And I hope I said that correctly. That's where you say, all right, if I just have a collection of named items, what you do is you compare one item against the next. Again, determine the scope of the individual items. And it works the same way as the justum generis. So the fact that customs is arguing this goes in the provision for a bottle case, it doesn't matter. Eonominy, right? Eonominy. Eonominy. Okay, now, eonominy. Eonominy can theoretically cover all forms of an article, but it doesn't have to. This court has said, what's a bottle case? Or what's the other items that are named there? Well, it could be lots of things, but we know it doesn't cover items that carry food or beverages. That's the case. So if you look at bottle case here compared with the other items, this is a luggage provision. It's a luggage provision. And if you look at the other luggage items, this court has decided that the term luggage relates to articles that are organized, store, protect, or transport clothing or personal items. So would you say a bottle case is not like a little Snuggly on a Cooley bottle? Yes, Your Honor. But more like that case you'd get if you went to the wine store and they put 12 bottles in and it has the separators, that that's what you would think a bottle case would be under this provision given all of the surrounding things that are listed. Yes, exactly. Well, it's going to be something that's a case that's meant to protect a bottle. Our product is a soft wrap that goes around the bottle or the jug. It doesn't give much protection at all. And it's insulated. It's not designed to work with the bottle. It's designed to work with the contents of the bottle. It's designed to keep the liquids cool for longer than, you know, uninsulated type products. And I think based on the decision here in SGI and on this notions to our associates type concept, again, luggage items do not cover food or beverage items. And the court should have considered that in making its determination in this case. The other thing I'd like to point out before turning to the second major point is that the articles in our case are in the same line as the SGI articles. There they were soft sided thermal insulated coolers. And this is the same type of thing. It's a soft alternative, if you will, to those hard sided jugs. They're sold in the same stores. They're sold side by side with the thermal coolers, with the soft sided coolers. And they're designed and they function the exactly same way, to keep things colder when they're put in there than if they have absolutely no protection whatsoever. The other thing that the court did here, they said that the products here were different than the products in SGI because the products here were not imported with bottles or jugs. It was the outside shell casing. And after it was imported, the importer would put in a bottle and then put it out for retail. The implication here to me is that if the bottle wraps were included with the bottles, then they'd be household articles. But because the bottle is missing, now they shift over to luggage. Again, that makes no sense to me. The purpose and design of the goods are exactly the same. They're used the same way. And whether the importer provides the bottle or he asks the consumer to provide the bottle, that's the function, to keep things cold. You've got to put a bottle in there. Now, again, if you look at the other items, SGI and also the items, there was a Dahle case, which was a CIT case. All of these products, these soft-sided thermal products, none of them include bottles and none of them include inside internal containers for food or beverages. You're not going to just pour a beverage into one of these containers. You need something to keep it, whether it be a bottle or a can or whatever. So, again, we don't see any difference between our products and the products in these other cases. And we think, based on SGI, that this merchandise should be classified under household articles. Okay, thank you. Let's hear from the other side. Ms. Powell. Good morning. May it please the Court. I would first like to respond to Appellant's argument regarding the justem generis and the application of that to this case. The government's position is justem generis does not apply here. As we pointed out in our brief, the first step in a classification matter is GRI 1, which is you look at the terms of the statute and the legal notes. And in this case, the term that we're looking at is bottle cases. It's eonamine. It includes all forms of the product, all forms of the article. Congress did not put any limitations on it. Therefore, there's no need to even get to justem generis. Congress didn't put limitations, but aren't I bound by the former limitations imposed by our court, vis-a-vis the statutory interpretation that did occur in SGI and sports graphics? If those cases said that this particular provision, not just bottle cases but everything in it, doesn't apply to the food or beverage containers, that's 34. I can't get the numbers right. 4202 doesn't. That's 34. 39. Thank you. Aren't I bound by that? I mean, if our court previously said that, then doesn't that limit the word bottle case in 4202 to be more like the hard receptacle or hard case that you would otherwise think of? Yes, the court is bound by the finding in SGI in sports graphics that the scope of the heading is, you know, 4202 doesn't involve food and beverage, 3924 does. However, in this case, and as the court properly found, it did the two-step analysis. First, it looked at bottle cases, and then it actually applied the rule of law in SGI and in sports graphics, and did an inquiry as to whether this merchandise involved food and beverage. And its finding was that it doesn't. Yeah, but that's really hard for me to swallow, no pun intended, given the case. But it's kind of hard for me because the mini bags in Dolly, for example. I've got four little kids at home, so I know just what these things are. You shove your bottle in them, and it's a cooler for carrying your bottle around, your baby bottle, or a jar of food. You throw it in there. It still requires the putting together of other things. No one would ever, in a million years, pour baby formula directly into a soft-sided mini bag. I mean, how unsanitary would that be? And then how would the child drink it? I mean, it's just not at all feasible or realistic in terms of its use. So why isn't this product exactly like Dolly? It's not exactly like Dolly. Dolly did not come with any bottles. You're correct. It did not come with any bottle. But this product cannot—I'll point to the joint appendix, pages A54 through A57. If you take a look, there's pictures of the merchandise there. The merchandise in Dolly, upon importation, it's ready to be sold to the consumer. These products, especially the ones on A55, A56, and A57, this is what the merchandise looks like in its complete assembled state. If you look at the jugs especially, it needs the inside jug as well as the bottle case. When the Dolly merchandise comes in, or the SGI merchandise comes in, it's ready to go to the consumer. The consumer can use it as is. It's not designed—it doesn't need another step to achieve its purpose. These do. And if you look at the— Well, counsel, but it does need another step to achieve its purpose. The bag in Dolly is useless but for the bottle that you're putting in it. It does need the other step. It's just a matter of whether the consumer is doing it or the seller is doing it. Why should that be a distinction? And maybe it should be, but explain to me why the government thinks it's a distinction for customs issues like this. Because merchandise is classified in its condition upon importation. And in this condition, this merchandise comes in, it's a finished bottle case. That's what it is when it comes in. It's a complete bottle case. And in Dolly, when it comes in, it's a complete cooler bag ready to go. In this case, it's a complete bottle case and needs the jug or needs the bottle. I'm sorry. How did you describe what Dolly was when it came in? Mini bag? I'm not sure what I said. It's ready to go to the consumer in its condition upon importation. But so is this Arctic thing. I could buy this and stick my own bottle in it. Actually, if you look at page 855, the family size- You could sell it as an insulated bottle wrap exactly as it's imported. The fact that they put stuff in it, I mean, maybe the mini bags are being sold with a free bottle or a free little sample of formula or a free something else. Do you see my point? I mean, it seems to me you could sell this insulated bag exactly as it comes into the country. You don't have to put a bottle in it. The fact that they later do, why should that affect how it was when it was imported? But they don't sell it without the bottle. And it's designed. It's specifically designed for these, especially the family size jugs with the special spigots. You tip and import. It's designed to work together. So even if you did put your bottle in it, that's not what it's designed for. It's designed to work with this particular bottle with this spigot. On A56, this bottle with this spout. There was research that went into these particular things to go inside, and that's how they sell it. If you look at A55- Mini bags are designed to hold bottles and or containers of food. I'm just struggling to see the difference between them sticking the bottle in before it's sold and me sticking the bottle in after I buy it. Well, and as you pointed out in our brief, the main difference is that there is a provision for this merchandise, and it's a bottle case. There is no provision. There was no provision back in 97 for a cooler bag. Well, let me ask you, because I imagine you would say statutory interpretation is a question of law that we get a crack at de novo, right? Yes. Yes. Bottle cases is a term in the statute. Yes. Okay. When I looked at customs definition, I was a little bewildered. Merriam-Webster Dictionary, which is what was used, definition number one, a box or receptacle for holding something. Definition number two, an outer covering or housing. Well, housing and box both sound to me stable, sturdy, protective, but yet the lower court seemed to disregard both of those portions of the definition, even though box was actually number one in the dictionary and instead adopted the receptacle or covering portion to the exclusion of the others. It seemed to me that this definition was selected to mold to this case as opposed to, boy, there's a lot of puns in that statement, isn't there? This definition was selected to make this thing fall within bottle cases as opposed to being somewhat of a sterile definition that might have been adopted based on the actual dictionary. The dictionary definitions that you pointed out, it's actually page 26 of our brief. It does say box or receptacle for holding something. It does say box, but then you have to take a look at 4202, and 4202 contains a number of different cases. All of which resemble boxes for the most part, right, or many of them. They're all kind of boxy. So why in the world would you have rejected box as dictionary definition number one? Why would the lower court have done that? And look, trunk, suitcase, vanity case, attache case, briefcase. I mean, when you get to school satchel, that could be self-cited. It certainly usually is. Again, my four kids are my point of reference. But all of the one, two, three, four, five things listed initially are generally case-like as opposed to a soft-sided. I mean, they could arguably be a trunk. Suitcases could be soft and not like a box, I guess. But I'm just having trouble. Jewelry boxes. Look where this bottle case is. The thing that follows it is jewelry boxes. Everything in this section seems, a lot of it is really boxy. So what would, I mean, your argument to me is it was okay for CIT to reject definition number one, a box, when defining bottle case, because of the other things listed in 4202. And I guess my question to you is, given all the things I just pointed to you in 4202, which are boxes, how is that really a justification for the CIT's rejection of dictionary definition number one? If you look at, after the enumerated listing of the articles, it says of leather, of composition leather, leather of sheeting, of materials, of textile materials, of fiber, or of paperboard, or paper. So it doesn't have to be boxy. It doesn't have to be rigid. It can be made of any of those things. For instance, an eyeglass case is fairly soft. It would fall in here. Or you can have an eyeglass case that's fairly rigid. It would fall within there, as long as it's made out of any one of those materials identified in 4202. So it's a fairly broad provision. So maybe the government's position then would be, because clearly you agree that 4202 contains things which are boxy. Your argument, I imagine, would be that it broadly contains things that are boxy and hard, as well as things that are soft. You wouldn't want to bind the government to the notion that it's only soft-sided stuff. You would suggest that it's both. I would agree that it does contain some things that are boxy. But I wouldn't say that's all it contains. Because if you look at some of this stuff, toiletry bags, they're not necessary. They don't have to be boxy. And there's the Linron case, which I don't have in this brief, but I know concerns small, soft vanity cases. So it doesn't necessarily have to be boxy to get it back. I don't disagree with you. It's things that could be hard or could be soft. But given that the Merriam-Webster Dictionary, which the lower court used, had definition number one to be a box, the definition for case, why was the CIT correct in rejecting that definition and instead accepting others, the lower, less preferred definitions? Well, there's two definitions presented here. And the definition that the court picked is one that was provided and crafted. It picked the one. It wasn't number one, but it was number two. It doesn't make it wrong. The court is free to look at dictionary definitions when it's looking at the statute. I assume we are to them, right? Yes. Okay. As we stated in our brief, our main contention is that the trial court was correct because this merchandise is a bottle case and it does fall within the time frame. Can I ask you the same question that I started off with the appellant with, which is, are there any more of these cases in the pipeline, or to your knowledge, does this mark the end of this stuff, given the 2001 change to the harmonized tariff stuff, where now, I guess, there is insulated food or beverage bags that is under 42 somewhere now. So now, clearly, if this case was brought today, I think it's an easy winner for the government. And so given that the change happened way back in 2001, is there any reason to believe that there are more of these cases in the pipeline, or is this, to your knowledge, the last of them? Without a circle, I'm not – well, I guess this would be the answer, without a circle. There might be one more, but it might be disappearing. And it was mentioned in here, the A.D. Sutton case. I'm not sure where the parties are with that, but that's the only one I know that might be alive. Okay. Any more questions? Any questions for Ms. Powell? Thank you, Ms. Powell. Thank you. Mr. Silverman? Yeah, I have nothing else to add. We're basically going with this court's decision in SGI, saying that food and beverage items don't go in the luggage provision. And we think that based on SGI, the court should have applied stare decisis and move this right to 3924 with all the other food and beverage items. Does the court have any more questions for me? No. Okay. Thank you very much. Thank you, Mr. Silverman. Thank you both. The case is taken under submission.